**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CHARLENE SMITH,
    *Plaintiff*,

    v.                               No. 3:22-cv-00239 (JAM)

BENDETT & McHUGH, P.C. *et al.*,
    *Defendants*.

**RULING GRANTING MOTIONS TO DISMISS**

This lawsuit deals with the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff Charlene Smith has filed this *pro se* action against three defendants—the law firm of Bendett & McHugh, P.C. ("Bendett & McHugh") and two loan servicing companies, Caliber Home Loans, Inc. ("Caliber") and Fay Servicing LCC ("Fay"). She accuses the defendants of sending her misleading communications in an unfair attempt to collect on a mortgage debt. The defendants have moved to dismiss. They argue that most of the statements and letters that Smith received were not debt collection communications, and that none of them were unfair or misleading under the FDCPA. I agree that Smith has not alleged facts that plausibly establish grounds for relief and therefore will grant the defendants' motions to dismiss.

**BACKGROUND**

This motion is the second time that the defendants have sought to dismiss Smith's suit. In her original complaint, Smith argued that the defendants violated not just the FDCPA, but also her 2014 bankruptcy discharge order. *See Smith v. Bendett & McHugh, P.C.*, 2023 WL 372784, at *3 (D. Conn. 2023).

Smith's overall target in that complaint appeared to be the recently concluded state foreclosure proceedings against her. *Id.* at 4. In 2005, Smith signed a promissory note for

1

$76,000 in favor of H&R Block Mortgage Corporation.[1] As collateral, she put up her New Britain home.[2] Importantly for Smith's claims, H&R Block appears to have twice lost the records of the mortgage, leading Smith to re-execute a second time in 2005 and a third time in 2007.[3]

Smith ultimately defaulted on her mortgage, and in 2013 filed for bankruptcy.[4] The Bankruptcy Court discharged her personal liability on her home loan.[5] However, in 2018, U.S. Bank—which had been assigned Smith's mortgage—began foreclosure proceedings against her in state court. The bank was successful and won a judgment of strict foreclosure in March 2020.[6] Smith then brought this suit, arguing in essence that the foreclosure proceedings should have been barred by her 2014 bankruptcy discharge. *Id.* at *3. She also claimed that many of the communications she received from the defendants violated the FDCPA. *Ibid.*

I granted the defendants motion to dismiss Smith's original claims. I concluded that the *Rooker-Feldman* doctrine barred relief to the extent that she sought to alter the state foreclosure judgment. *Id.* at *5. I further held that allegations that the defendants violated a bankruptcy order should have been heard by the bankruptcy court in the first instance. *Ibid.* Finally, I determined Smith's FDCPA claims lacked the specificity necessary to plausibly state a claim for relief. *Id.* at *6-7. I did, however, grant Smith permission to file an amended complaint. *Id.* at *8.

Smith's amended complaint now alleges 44 violations of the FDCPA.[7] These counts focus on a series of letters and documents pertaining to her mortgage that the defendants sent

---

[1] Doc. #42 at 4-5 (¶ 23).
[2] *Id.* at 2, 4-5 (¶¶ 6, 23).
[3] *Id.* at 5 (¶¶ 24-25).
[4] *Id.* at 5 (¶ 27); Doc. #42-1 at 7 (Smith's Exhibit C) (Caliber's Notice to Smith of Default).
[5] I draw this fact from Smith's bankruptcy proceedings, of which I take judicial notice (as in *Smith I*). *See* Order Discharging Debtor, *In re Smith*, No. 13-bk-20996, Doc. #23.
[6] I draw this fact from the foreclosure proceedings against Smith's New Britain property, of which I take judicial notice (as in *Smith I*). *See* J. of Strict Foreclosure, *U.S. Bank Tr., N.A. v. Smith*, HHB-CV18-6042999-S, Doc. #120.50.
[7] *See generally* Doc. #42 at 12-29 (¶¶ 73-136).

Smith between March 2021 and February 2022.[8] Smith's general argument is that the communications constitute unfair, false, or misleading efforts to collect on a debt. She alleges three counts based on one Caliber communication; 26 counts based on six Fay communications; and 15 counts based on two Bendett & McHugh communications.[9] Because these documents are central to Smith's claims, they merit discussion in some detail.

### The communications

*Caliber's Communication:* On March 16, 2021, Caliber sent Smith a "mortgage statement."[10] The statement provides information about a mortgage on 243 Lawlor St., Apt 3C, the New Britain property Smith used as collateral in 2005.[11] It lists the outstanding principal on the mortgage, the amount needed to reinstate the mortgage, and the acceleration amount (*i.e.*, the amount due to pay off the mortgage entirely).[12] It also contains two other features relevant to the disposition of this case. First, it includes a prominent "Bankruptcy Message" explaining that the mortgage statement is "not an attempt to collect a debt against [Smith]," but instead serves "informational and compliance purposes only."[13] Second, the statement notes that "[t]he servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process on the loan."[14]

*Fay's Communication on July 10, 2021:* It appears that Fay took over the servicing of Smith's loan from Caliber sometime between March and July of 2021. On July 10, Fay sent Smith a mortgage statement largely resembling the one Caliber provided.[15] It also lists a

---

[8] *Ibid.*

[9] *Ibid.*

[10] *Id.* at 12-13 (¶¶ 73-77); *see also* Doc. #42-1 at 66-68 (Smith's Exhibit H) (Caliber Mortgage Statement).

[11] *Id.* at 66; Doc. #42 at 2, 4-5 (¶¶ 6, 23).

[12] Doc. #42-1 at 66.

[13] *Ibid.*

[14] *Ibid.*

[15] *Id.* at 13 (¶ 78); *see also* Doc. #42-1 at 70-71 (Smith's Exhibit I) (July 10 Fay Mortgage Statement).

reinstatement amount, an outstanding principle, and an acceleration amount, and contains effectively the same "bankruptcy message."[16] Finally, it states that Fay is "a debt collector" but also acknowledges that "[t]o the extent [Smith's] original obligation was discharged, or is subject to an automatic stay under the United States Bankruptcy Code, [the statement] is being provided for informational purposes only and does not constitute an attempt to collect a debt or impose personal liability."[17]

*Fay's Communications on August 10, 2021, September 11, 2021, October 11, 2021, and February 10, 2022:* Each of these communications is effectively the same, though they differ slightly from the July 10 communication. All four documents are mortgage statements and contain the same basic information—a bankruptcy message, a reinstatement quote, and an outstanding principal—discussed above.[18] However, they also include extensive fine print, including a "mini-*Miranda*" warning. That warning informs the reader that Fay is a debt collector, that one purpose of the communication could be to collect a debt, and that any information Smith provides could be used for that purpose.[19]

*Fay's Communication on December 16, 2021:* This communication was a letter Fay sent to Smith. The letter claims to be a response to Smith's request for information and explains the cost and procedure for reinstating Smith's loan.[20] Like the previous Fay communications, the

---

[16] *Id.* at 70.
[17] *Id.* at 71.
[18] *Id.* at 73-80, 85-86 (Smith's Exhibits J-L, N) (Fay Mortgage Statements, Variously Dated)
[19] *See, e.g.*, *id.* at 74.
[20] *Id.* at 82-83 (Smith's Exhibit M) (December 16 Fay Letter).

4

letter discloses that Fay is a debt collector, but disavows any attempt to collect debt through the letter to the extent that the debt was discharged in bankruptcy.[21]

*Bendett & McHugh's First Communication on December 17, 2021:* The first Bendett & McHugh letter purports to be "in response to [Smith's] request for reinstatement figures on [her] loan."[22] It provides a "reinstatement quote" valid until December 30, 2021.[23] Bendett & McHugh include a bankruptcy message, but also explicitly declare that they are "attempting to collect a debt."[24]

*Bendett & McHugh's Second Communication on December 17, 2021:* The second Bendett & McHugh letter is quite similar to the first, but it provides a "payoff quote"—*i.e.,* the total amount required to pay off the entire loan—rather than a "reinstatement quote."[25]

While Smith points to specific aspects of each communication that she believes are misleading, she also relies on discrepancies across communications.[26]  She argues that these differences help demonstrate that the defendants are pursuing a "phantom debt," *i.e.*, a debt that

---

[21] *Id.* at 83.
[22] *Id.* at 88 (Smith's Exhibit O) (First December 17 Bendett & McHugh Letter).
[23] *Id.* at 88-89.
[24] *Id.* at 90.
[25] *Id.* at 92 (Smith's Exhibit P) (Second December 17 Bendett & McHugh Letter).
[26] *See, e.g.*, Doc. #42 at 14 (¶¶ 81-83).

she does not actually owe.[27] In particular, she suggests that these companies are trying to collect on an earlier, now invalid iteration of her mortgage.[28]

### *Relevant FDCPA provisions*

Smith asserts that these nine communications variously violate four provisions of the FDCPA: 15 U.S.C. §§ 1692(e)(2), 1692(e)(10), 1692(f), and 1692(g)(a)(3).

Section 1692(e) prohibits "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." Subsection (2) specifically bans "the false representation of the character, amount, or legal status of any debt or any services rendered or compensation which may be lawfully received by any debt collector for the collection of debt." Meanwhile, subsection (10) bans "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Section 1692(f) provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." It goes on to list a number of banned practices, but Smith does not cite a specific subsection of 1692(f) in her claims.

Finally, Section 1692(g)(a)(3) requires a debt collector to include a statement in its initial communication with the debtor explaining "that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." Smith asserts violations of 1692(e)(2), 1692(e)(10),

---

[27] *See, e.g.*, *id.* at 6 (¶ 33).
[28] *See, e.g.*, *id.* at 6, 13 (¶¶ 33, 77).

and 1692(f) against all three defendants, but brings only a 1692(g)(a)(3) claim against Bendett & McHugh.

### DISCUSSION

For purposes of a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint may not survive unless it alleges facts that taken as true give rise to plausible grounds to sustain a plaintiff's claims for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.[29]

Smith's claims rely heavily on the communications she received from the defendants, and she attaches those documents to her complaint. The Court may consider such extrinsic documents in ruling on a motion to dismiss when—as here—they are incorporated by reference or are otherwise integral to the complaint and there is no dispute about the authenticity or accuracy of the documents. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

If the plaintiff is a *pro se* litigant, as Smith is here, the Court must liberally construe the complaint and interpret it to raise the strongest grounds for relief that its allegations suggest. *See, e.g.*, *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (*per curiam*). Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish at least plausible

---

[29] Unless otherwise indicated, this ruling for ease of reading omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

grounds for granting relief. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

### *Caliber*

Smith brings three counts against Caliber based on the March 16 communication. First, she argues that Caliber misrepresented the character and amount of her mortgage debt in violation of Sections 1692(e)(2) and 1692(e)(10).[30] She suggests that the "acceleration amount" Caliber lists—that is, the amount necessary to pay off the entire mortgage—should equal the sum of the reinstatement amount and the outstanding principle from the loan.[31]

Smith's second count concerns the statement "[t]he servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process on the loan."[32] Smith asserts that this statement contains an impermissible implicit threat to refer her account to an attorney to take legal action.[33]

Finally, Smith argues that Caliber violated the FDCPA by "explicitly impl[ying] the [outstanding principal] attempting to be collected was related to the foreclosure debt, when the [facts stated in the amended complaint] reflect that is not possible."[34] Read in the context of the entire complaint, Smith seems to be arguing that Caliber is falsely presenting this debt as the foreclosure debt, when it is in fact some other "phantom" debt.[35]

Caliber offers two reasons why Smith's claims against it should be dismissed. First, it argues that the mortgage statement in question is not a "debt collection communication" within

---

[30] *Id.* at 12 (¶ 75).
[31] *Ibid.*
[32] *Id.* at 12-13 (¶ 76).
[33] *Ibid.*
[34] *Id.* at 13 (¶ 77).
[35] *See, e.g.*, *id.* at 6, 13 (¶¶ 33, 77).

the meaning of the FDCPA.[36] Second, it asserts that none of Smith's counts plausibly allege a misleading, deceptive, or unfair debt collection practice.[37] Caliber is correct on both points.

Contrary to Smith's position, not every communication between a mortgage servicing company and a former bankruptcy debtor violates the FDCPA.[38] The FDCPA only applies to a communication if "a consumer receiving [that communication] could reasonably understand it to be… in connection with the collection of a debt." *Hart v. LCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015). In making that determination, courts in this circuit consider whether the communication (1) directs the recipient to mail payments to a specified address, (2) refers to the FDCPA by name, (3) imposes a timeline for disputing the debt's validity, or (4) explicitly states that it is an attempt to collect upon a debt. *See Carlin v. Davidson Fink, LLP*, 852 F.3d 207, 215 (2d Cir. 2017); *Williams v. Rushmore Loan Mgmt. Servs., LLC*, 2018 WL 1582515, at *7 (D. Conn. 2018).

The Caliber mortgage statement displays only one of these four characteristics. While it does provide a specific address for payments, it does not mention the FDCPA, impose a timeline for challenging the debt's validity, or purport to be an attempt to collect upon a debt.[39] In fact, the statement largely resembles one that I determined *not* to be a debt collection communication in *Thompson v. Ocwen Fin. Corp.*, 2018 WL 513720, at *4-5 (D. Conn. 2018). That statement also included language like "[t]his statement is for informational purposes only" and "[i]t is not

---

[36] Doc. #45 at 7-8.
[37] *Id.* at 8-11.
[38] Smith cited *Seklecki v. Carrington Mortgage Services, LLC* at oral argument, asserting that it provided persuasive authority for her reading of the FDCPA. That case does have some similarities to this one; it also involved a landowner who had gone through bankruptcy, then received communications from a mortgage servicing company. *Seklecki*, 2015 U.S. Dist. LEXIS 122262, at *2-3. However, the factual similarities obscure substantive legal difference. The primary FDCPA issue in that case related to the statute of limitations. *Id.* at *9-13. There was no discussion of whether the defendant was actually engaged in debt collection communications. *Ibid.* Accordingly, *Seklecki* does not speak on this or any other dispositive question in this case.
[39] Doc. #42-1 at 66-68.

intended as an attempt to collect a debt from you personally," which helped me determine that even an unsophisticated consumer would not consider it to be a debt collection effort. *Ibid.*

Caliber's inclusion of that language has the same effect here. Moreover, at least one other court arrived at the same conclusion when faced with this type of mortgage statement. *See Graham v. Caliber Home Loans, Inc.*, 2021 WL 2557502, at *6-7 (N.D. Ga. 2021) (concluding that "[t]he least-sophisticated consumer would read the prominently displayed bankruptcy message and understand that the statements were 'for informational and compliance purposes only'").

Because the mortgage statement in question is not a debt collection communication, Smith cannot plausibly allege that its contents violate the FDCPA. But even if the communication were "in connection" with the collection of a debt, I would still conclude that Smith has failed to state a claim against Caliber. A communication is misleading under the FDCPA when it is "'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Reyes v. IC Sys., Inc.*, 470 F. Supp. 3d 190, 193 (D. Conn. 2020) (quoting *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016)). Here, Smith has not shown that the Caliber mortgage statement was subject to a reasonable but inaccurate interpretation.

Smith's first count relies on a unilateral calculation that Caliber never invited her to perform. Nowhere on the mortgage statement does it suggest that Smith's "acceleration amount" should equal the sum of the outstanding principle and the reinstatement amount—Smith has drawn that inference from thin air.[40] While the FDCPA affords consumers extensive protection, courts must still apply the statute "'in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'" *See Easterling v. Collecto, Inc.*, 692 F.3d

---

[40] *Ibid.*

229, 234 (2d Cir. 2012) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).
Smith's first count falls into that category.

Nor does the inclusion of the statement "[t]he servicer has made the first notice or filing
required by applicable law for any judicial or non-judicial foreclosure process on the loan"
violate the FDCPA (as Smith argues in count 2).[41] Smith asserts that this statement impliedly
threatens to refer her account to an attorney for legal action.[42] But assuming that inference can be
made, the FDCPA sections she cites—15 U.S.C. §§ 1692(e)(2) and 1692(e)(10)—prohibit only
*false or misleading* representations that the account will be referred to an attorney. *See Madura
v. Lakebridge Condo. Ass'n Inc.*, 382 F. App'x 862, 865 n.2 (11th Cir. 2010) ("[j]ust indicating
that a matter may be referred to an attorney and a lien filed if payment is not made is not a
deceptive practice"). Here, there is no obvious reason why Smith's mortgage debt could not be
referred to an attorney, so there appears to be nothing false or misleading about the statement she
challenges.

Smith's third count seems to rely on her "phantom debt" theory. She suggests that
Caliber is (a) seeking to collect on a debt different from the foreclosure debt, but (b) is using the
foreclosure debt to mislead Smith into paying.[43]

While Smith's conclusion cannot be definitively ruled out as a matter of theoretical
possibility, it does not cross the line separating a sheer possibility from actual plausibility. At
best, her complaint alleges (1) that she executed the same mortgage three times, (2) several
different agencies/firms have contacted her about debts; (3) the organizations contacting her have
referred to different account numbers; and (4) the various organizations have provided her with

---

[41] Doc. #42 at 12-13 (¶ 76).
[42] *Ibid*.
[43] *Id.* at 13 (¶ 77).

slightly differing information.[44] Accepting these facts as true, it is theoretically possible that each organization is trying to collect some debt other than the foreclosure debt. But that metaphysical possibility cannot keep Smith's claims alive when she cannot point to anything aside from minor accounting discrepancies in support of her theory. *See Iqbal*, 556 U.S. at 678 ("[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief"). Nothing in Smith's complaint suggests any measurable likelihood that the defendants seek to trick her into paying an invalid debt. Because she has failed to allege facts that move the needle from possibility to plausibility, Smith's third count does not state a claim.

### *Fay*

Smith's 26 claims against Fay stem from six communications. Smith often brings the same substantive claim with regard to multiple communications, so where possible, I analyze multiple counts together.

Like Caliber, Fay also argues that none of the documents it sent Smith were debt collection communications under the FDCPA. I agree with Fay, but because each of these communications differs slightly from the Caliber mortgage statement, I must address these discrepancies.

The first Fay mortgage statement most closely resembles Caliber's. The primary difference is that Fay's communication acknowledges that Fay is a debt collector.[45] But that fact, by itself, does not change the analysis. Like Caliber's communication, Fay's mortgage statement contains only one of the four characteristics that the Second Circuit deemed relevant in *Carlin*. It does not refer to the FDCPA by name, impose a timeline for disputing the debt's validity, or

---

[44] *See generally* Doc. #42 at 4-11 (¶¶ 23-68).
[45] Doc. #42-1 at 71.

explicitly state that it is an attempt to collect upon a debt.[46] *See Carlin*, 852 F.3d at 215.

Moreover, disclosure that a company is a debt collector does not cancel out the multiple places in

which the statement declares itself to be for informational purposes only. *See Thompson*, 2018

WL 513720, at *4-5. As a result, I reach the same conclusion for the first Fay communication as

I did for the Caliber mortgage statement: it is not a debt collection attempt under the FDCPA.

The other four Fay mortgage statements present a slightly more difficult question. These

statements do not display the "bankruptcy disclaimer" as prominently—it lands in the middle of

the mortgage statement rather than at the top of the page.[47] Moreover, the statements include a

"mini-*Miranda*" warning, which declares "[t]his communication is from a debt collector, and it

is for the purpose of collecting a debt and any information obtained will be used for that purpose.

This notice is required by the provisions of the Fair Debt Collection Practices Act and does not

imply that we are attempting to collect money from anyone who has discharged the debt under

the bankruptcy laws of the United States."[48] Both the mention of the FDCPA and the statements'

declaration that "[they are] for the purpose of collecting a debt" militate in favor of a finding that

these are debt collection communications.

Viewing the statements as a whole, however, I conclude that they are not debt collection

efforts. To begin, courts have repeatedly rejected the notion that the Mini Miranda warning is

enough to implicate the protections of the FDCPA. For example, in *Lovegood v. Ocwen Loan

Servicing, LLC*, 2015 WL 5042913, at *10 (W.D. Va. 2015), *aff'd* 666 F. App'x 308 (4th Cir.

2016), the district court addressed a communication that included a mini-*Miranda* warning and

concluded that when that warning was immediately followed with language like that at issue

---

[46] *See id.* at 70-71.
[47] *See, e.g.*, *id.* at 73.
[48] *See, e.g.*, *id.* at 74.

here, the communication was not in connection with the collection of a debt. Likewise, in *Mathieson v. Wells Fargo Bank*, 524 F. Supp. 3d 1246, 1254 (M.D. Fla. 2021), a district court concluded that the inclusion of a mini-*Miranda* warning "is not determinative of whether the letter is related to the collection of the debt." *See also Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107, 1114 (8th Cir. 2021) ("boilerplate Mini Miranda disclosures 'do not automatically trigger the protections of the FDCPA'") (quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010)).

I also find relevant that (1) the statements repeatedly avow that if Smith's debt was discharged in bankruptcy, then they are meant for "informational purposes" only, and (2) the statements acknowledge that "[o]ur records show that either you are a debtor in bankruptcy or you discharged personal liability for the mortgage loan in bankruptcy."[49] Even the least sophisticated consumer possesses "'a willingness to read a collection notice with some care,'" so Smith can be expected to know that Fay did not think her personally responsible for the loan in question. *Garcia v. L. Offs. Howard Lee Schiff, P.C.*, 401 F. Supp. 3d 241 (D. Conn. 2019) (quoting *Altman v. J.C. Christensen & Assocs., Inc.,* 786 F.3d 191, 193-94 (2d Cir. 2015)). With that in mind, I conclude that no consumer could reasonably understand the second group of Fay mortgage statements "to be… communication[s] in connection with the collection of a debt." *Hart*, 797 F.3d at 225.

The final Fay communication was a letter, which purportedly was a response to her request for information on the amount she would need to pay to reinstate her home loan. The letter, like the previous communications, acknowledges that Fay is a debt collector, but disavows any attempt to collect on a debt discharged in bankruptcy.[50] It also does not mention the FDCPA.

---

[49] *See, e.g.*, *id.* at 73-74.
[50] *Id.* at 83.

For these reasons, the letter occupies effectively the same legal territory as the first Fay communication and is not cover by the FDCPA. It is further worth noting that Smith appears to have initiated this communication with Fay, which would further remove the letter from the scope of the FDCPA. *See Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 329-30 (D. Conn. 2012).

Moreover, regardless of whether the communications were connected to a debt collection effort, Smith does not allege sufficient facts to state any plausible claims against Fay. Smith asserts that the statements and letter were misleading, unfair, deceptive, or false in a variety of ways, but nothing in the communications meets any of those descriptions. For example, her first count against Fay is effectively a repeat of her first claim against Caliber and warrants dismissal for the same reasons.[51]

In counts 2, 12, 16, and 17, Smith faults Fay for not offering an explanation of periodic changes in the quoted reinstatement amount.[52] But mortgage balances change frequently, and slight discrepancies in statements separated by a month or two can hardly be termed false, misleading, or unfair. *Cf. Voss v. C.I.R.*, 796 F.3d 1051, 1063 (9th Cir. 2015) (observing that "mortgage balances usually change monthly"). These counts therefore fail to state a claim.

Counts 3, 6, 9, 13, 22, and 25 assert that Fay misrepresented the Escrow Balance on the mortgage statements.[53] The listed balance is -$32,645.01, but Smith asserts that Fay previously stated the balance was $0.00 in an accounting spreadsheet the company sent her (which she attaches to her complaint as Exhibit F).[54] This claim holds no water. As Fay correctly notes, even

---

[51] *Compare* Doc. #42 at 12 (¶ 75), *with id.* at 13-14 (¶ 80).

[52] *Id.* at 14, 17-19 (¶¶ 81, 97, 101, 102)

[53] Doc. #42 at 14-19, 22-23 (¶¶ 82, 87, 92, 98, 113, 116).

[54] *See* Doc. #42-1 at 60-61 (Smith's Exhibit F) (Fay Servicing Accounting Spreadsheet).

a cursory review of Exhibit F contradicts Smith's allegations.[55] In the "Adv Bal" column, the Fay accounting spreadsheet lists $32,645.01 as of March 10, 2022.[56] "Adv Bal" almost certainly refers to escrow funds Fay has advanced to Smith.[57] The second page of the Fay accounting reveals as much: when Smith received an "Escrow Advance" $1,569.65 (mid-way down the second page of Exhibit J) on July 7, 2021, her "Adv Bal" increased by that amount (jumping from $31,075.36 to $32,645.01).[58] As a result, it appears that Smith's Escrow Balance was precisely what Fay listed, and that the communication was not misleading in the way alleged by these counts.

Counts 4, 7, 10, 14, and 19 rely on differences between the same accounting spreadsheet (Exhibit F) and various communications sent by Fay.[59] Specifically, she asserts that Fay misleadingly quoted her a lower total for her "corporate advance total" than what is listed on the account spreadsheet.[60] However, Exhibit F does not list a "corporate advance total." Instead, it lists a "Restricted Corp. Adv Adj." which is largely on par with that listed in the various mortgage statements.[61] It seems that Smith arrived at the higher figure by adding subsequent entries in the same column—but nowhere does the spreadsheet suggest that performing this calculation will lead her to an accurate "corporate advance total." Accordingly, Smith has not advanced facts demonstrating her mortgage statements were false, deceptive, or misleading.

In count 18, Smith makes a version of the same claim she asserts in count 2: Fay quoted her a reinstatement amount that she believes was too low based on her personal calculations.[62]

---

[55] Doc. #51-1 at 11.
[56] Doc. #42-1 at 60.
[57] *Id.* at 60-61.
[58] *Id.* at 61.
[59] Doc. #42 at 14-18, 20 (¶¶ 83, 88, 93, 99, 108).
[60] *Ibid.*
[61] Doc. #42-1 at 61.
[62] Doc. #42 at 20 (¶ 107).

Because Fay did not provide any explanation for why the reinstatement quote was lower than Smith thought it should be, she argues the December 16 letter is false, deceptive, or misleading, and uses unfair and unconscionable means to collect the debt.[63]

As Fay notes, however, not providing an explanation about changes in the amount owed is not equivalent to *misrepresenting* that amount.[64] That seems particularly true when the creditor requests a smaller sum than the debtor believes they owe. Count 18 does not allege that Fay's quote was inaccurate—instead, it merely faults Fay for failing to provide an explanation.[65] Because Smith does not describe what is false, misleading, or unfair about declining to explain the decrease in charges, count 18 fails to state a claim.

Count 23 alleges that Fay's February 10 mortgage statement violated 1692(e)(2) and 1692(e)(10) by failing to list a "corporate advances" total.[66] However, the statement does list such a total, and does so in the same location as the previous statements.[67] Accordingly, count 23 fails to state a claim.

Count 24 asserts that the February 10 mortgage statement violated Sections 1692(e)(2) and 1692(e)(10) by listing only four transactions between January 12 and February 8.[68] Exhibit F lists ten transactions during that same period—as a result, Smith argues that the February 10 statement is false or misleading.[69] However, the mortgage statement explicitly warns that some "additional fees, charges or attorney fees/costs may have been incurred but not yet invoiced."[70]

---

[63] *Ibid.*
[64] Doc. #51-1 at 13.
[65] Doc. #42 at 20 (¶ 107).
[66] *Id.* at 22 (¶ 114).
[67] Doc. #42-1 at 85.
[68] Doc. #42 at 22 (¶ 115).
[69] Doc. #42-1 at 60; Doc. #42 at 22 (¶ 115)
[70] Doc. #42-1 at 85; Doc. #51-1 at 12.

In light of this disclaimer, even an unsophisticated consumer would understand that the mortgage statement may omit some recent transactions. On its face, the mortgage statement is therefore not false or misleading in the way Smith alleges.

Finally, counts 5, 8, 11, 15, 20, 21, and 26 reiterate Smith's phantom debt argument.[71] I rejected this theory with regard to count 3 against Caliber, and see no reason to reach a different conclusion with regard to Fay. As a result, I will dismiss these counts as well.

### *Bendett & McHugh*

Unlike Caliber and Fay, Bendett & McHugh do not attempt to argue that their letters to Smith were not debt collection communications. Instead, they interpose a wide variety of other objections, including the applicability of the FDCPA to foreclosures, the statute of limitations, and various abstention doctrines.[72] For good measure, they argue that each of Smith's 15 counts does not allege facts sufficient to state an FDCPA claim.[73] In part because Bendett & McHugh's other arguments are quite weak, I begin and end the analysis with this final contention.

Smith's first claim against Bendett & McHugh alleges a violation of 15 U.S.C. § 1692(g)(a)(3).[74] As previously discussed, that provision requires a debt collector to include a statement in its initial communication with the debtor explaining "that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."[75] Smith contends that the

---

[71] Doc. #42 at 15-19, 21, 23 (¶¶ 84, 89, 94, 100, 109-110, 117).
[72] Doc. #49-1 at 5-7.
[73] *Id.* at 8-10.
[74] Doc. #42 at 23 (¶ 120).
[75] The debt collector may also satisfy this provision by sending a notice including this statement within five days of the initial communication. 15 U.S.C. § 1692(g)(a).

first December 17 letter was the "initial communication" with Bendett & McHugh, and that it failed to include the required statement under Section 1692(g)(a)(3).[76]

Bendett & McHugh's response relies on a letter they attach to their motion to dismiss. They assert that letter (dated March 31, 2017) was a prior communication with Smith and conclude that the December 17 letter does not fall within the ambit of 15 U.S.C. § 1692(g)(a)(3).[77] That argument fails, because at the Rule 12(b)(6) stage, I may only take account of (1) extrinsic material that the complaint incorporates by reference, (2) extrinsic material that is integral to the complaint, or (3) material of which courts can take judicial notice. *See, e.g.*, *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th. 293, 304-05 (2d Cir. 2021). The complaint does not make any reference to Bendett & McHugh's Exhibit A, nor does Smith "rel[y] on the terms and effect of [Exhibit A] in drafting the complaint," so I may not consider it. *Ibid.*

Nevertheless, the first Bendett & McHugh count still does not state a claim. At oral argument, Smith conceded that she had previously received communications from Bendett & McHugh, an admission that would defeat her 1692(g)(a)(3) claim. I can—and here do—consider her judicial admission for the purpose of this motion. *See Sherman v. Town of Chester*, 339 F. Supp. 3d 346, 353 (S.D.N.Y. 2018) (statements made during oral argument are binding judicial admissions). Accordingly, I determine that the first Bendett & McHugh letter does not fall within the ambit of Section 1692(g)(a)(3).

In her second count, Smith seems to be arguing that Bendett & McHugh misrepresented her debt by accounting for the same mortgage related expenses in two separate places on the letter. Some items allegedly appear in two lists: the "Amounts Due to Reinstate" and the

---

[76] Doc. #42 at 23 (¶¶ 118, 120).
[77] Doc. #49-1 at 6-7.

"Itemization of Accrued Legal Fees and Costs."[78] However, inspection of the documents reveals

that the only line appearing in both lists is "Title Search," which has an estimated cost of $0.00

in the itemization of legal fees and costs.[79] Put otherwise, Bendett & McHugh do not appear to

be even facially double-counting costs. For that reason, count 2 does not state a claim for relief.

In count 3, Smith appears to argue that Bendett & McHugh violated 1692(e)(2) and

1692(e)(10) in their first December 17 letter by quoting her a lower "corporate advances" charge

than a previous accounting by Fay.[80] But Smith does not allege any facts that would explain why

quoting a lower amount is false or misleading. As the Bendett & McHugh letter explicitly warns

"the amounts owed [on a mortgage] may change over time."[81] Smith must allege facts that show

more than a mere change; she must offer facts that would explain why the change was inaccurate

or misleading. She has not done so, and therefore count 3 must be dismissed.

Count 4 also alleges that Bendett & McHugh violated Sections 1692(e)(2) and

1692(e)(10) by quoting Smith a different figure that Fay.[82] Fay's December 16 mortgage

statement placed the reinstatement amount at $69,930.24, while Bendett & McHugh put the

amount about $600 higher.[83] Without more, this count does not state a claim. Even an

unsophisticated consumer would understand that Bendett & McHugh likely did not compute the

loan figures on the same day as Fay, and doing so would create small discrepancies in the

amount owed. Smith has not alleged any facts suggesting that the Bendett & McHugh quote was

---

[78] Doc. #42 at 24 (¶ 121).
[79] Doc. #42-1 at 89.
[80] Doc. #42 at 24 (¶ 122).
[81] Doc. #42-1 at 88.
[82] Doc. #42 at 24 (¶ 123).
[83] *Ibid.*

inaccurate when created, and accordingly she does not state a claim under Section 1692(e)(2) or 1692(e)(10).

In counts 5, 6, and 7, Smith brings the same argument she leveled against Fay and Caliber—that Bendett & McHugh improperly implied that the debt to be collected is related to the foreclosure debt.[84] These counts will be dismissed for substantively the same reasons.

The first two counts related to the second letter (counts 8 and 9) allege claims that are virtually identical to those put forth in counts 2 and 3.[85] These claims fail for the same reasons.

Count 10 alleges that Bendett & McHugh misled Smith by understating the amount required to pay off her entire debt.[86] In essence, Smith seems to think that a previous Fay mortgage statement from October 11 listed an *additional* $60,000-plus in past due payments that she would also need to make to pay off her debt.[87] But nothing about the Fay mortgage statement would lead even an unsophisticated consumer to that conclusion. The Fay statement lists $67,021.48 in "overdue payments," but nowhere implies that those overdue payments would not go towards paying down the interest and principal.[88] In short, Smith offers no facts to suggest that Bendett & McHugh should have added a $67,021.48 penalty to the payoff amount they quoted her.

In count 11, Smith does not appear to allege any claim. Instead, she points to a discrepancy between one of Bendett & McHugh's filings in the foreclosure action and their second December 17 letter and argues that Bendett & McHugh should have realized from this discrepancy that they were attempting to collect a debt different from the foreclosure debt.[89] At

---

[84] *Id.* at 24-26 (¶¶ 124-126).
[85] *Compare id.* at 26 (¶¶ 129-130), *with id.* at 24 (¶¶ 121-122).
[86] *Id.* at 27 (¶ 131).
[87] *Ibid.*
[88] Doc. #42-1 at 79-80.
[89] Doc. #42 at 27 (¶ 132).

best, this is a factual allegation supporting counts 5-7 and 13-15, not an independent claim for relief.

Count 12 relies on an alleged discrepancy between the two Bendett & McHugh letters.[90] In the first letter (which explains the amount due to reinstate the loan), the firm listed the "Escrow Overdraft/Shortage" fee as $0.00. Meanwhile, in the second letter (which explains the amount due to pay off the loan) listed "Negative Escrow" as $32,645.01.[91] But an Escrow Shortage and Negative Escrow have different meanings and would not necessarily have the same value. *See In re Chew*, 627 B.R. 112, 116-17 (Bankr. E.D. Pa. 2021) (an escrow shortage refers to an expected future deficit in the escrow account, while negative escrow represents funds already advanced by the institution to make payments). And Smith does not explain why these two amounts *should* be the same in her case. As a result, she does not state a plausible claim for relief.

Finally, counts 13-15 are substantively identical to counts 5-7, with the exception that they bring these claims with respect to the second letter rather than the first.[92] These claims will be dismissed for the same reasons as claims 5-7.

## CONCLUSION

The Court GRANTS Caliber's motion to dismiss (Doc. #44) both because the mortgage statement it sent Smith was not covered by the FDCPA and because Smith does not plausibly allege any violations of 15 U.S.C. §§ 1692(e)(2), 1692(e)(10), or 1692(f). The Court GRANTS Fay's motion to dismiss (Doc. #51) for the same reasons. The Court GRANTS Bendett & McHugh's motion to dismiss (Doc. #49) because Smith does not allege facts that plausibly

---

[90] *Id.* at 27 (¶ 133).
[91] *Compare* Doc. #42-1 at 89, *with id.* at 92.
[92] *Compare* Doc. #42 at 27-29 (¶¶ 134-136), *with id.* at 25-26 (¶¶ 124-126).

support her claimed violations of the FDCPA. Because the Court has previously offered Smith

an opportunity to file an amended complaint, the Court's dismissal is with prejudice. The Clerk

of Court shall close this case.

It is so ordered.

Dated at New Haven this 13th day of March 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge